of the charge. It is not necessary there should be a formal written protest, but there must be some objection, some notice that the claim is disputed, as the ground of objection or dispute may be removed or agreed to; but if paid without such objection, merely on a mistaken construction of the law, it is binding and cannot be recovered back, or set-off against another demand. Was there then any such notice or objection by the defendants at the time of payment? The only evidence on their part is that of Mr. Newman, who says there was no formal protest, but Mr. Clement informed him there was a mistake in calculating the duties, and that he (Mr. Clement) had been talking to Mr. Kern about it. Mr. Kern, who was a deputy collector, is since deceased, his testimony was not taken in his lifetime, and no witness is produced who heard the conversation. On the other side, Mr. Howell, deputy collector, Mr. Martin, the cashier, Mr. Bell, the ascertaining clerk, and Mr. McAdam, the bond clerk, have all been examined, and each of them say they never heard of any complaint by the defendant, and Mr. Howell states that if such complaint had been made, it would have been within his peculiar duty to examine it, but he knows of none.

Still, this is a question of fact for the jury, and it is their province to decide it, the burden of proof being on the defendants. If you are satisfied that a duty was charged on the boxes or hogsheads, over and above the value of the sugar or molasses at the time and place of exportation, and that such excess was paid by the defendants, they at the same time protesting or complaining against the justness or legality of the demand, then they are entitled to deduct the amount of such excess from the sum claimed in this suit. If, however, you believe that no such excess was charged, or if charged, that it was paid voluntarily and without complaint, it is binding on the defendants, and they will not be entitled to the deduction.

On the 28th March, 1843, the jury returned a verdict for the United States against Clement for $851, Newman having been discharged under the bankrupt law.

## Case No. 14,816

UNITED STATES v. CLEMENTS.

[2 Cranch, C. C. 30.] [1]

Circuit Court, District of Columbia. Nov. Term, 1811.

BASTARDY—RECOGNIZANCE—HOW TAKEN.

A recognizance in a case of bastardy cannot be taken by a justice of the peace, in Virginia, unless upon the application of the overseers of the poor.

This was a recognizance taken by a justice of the peace in Alexandria in a case of bastardy.

E. J. Lee, for defendant, moved the court to quash it because it was not taken at the request of the overseers of the poor, according to the act of assembly of Virginia of 26th December, 1792, p. 183, § 13.

THE COURT (THRUSTON, Circuit Judge, absent) ordered the recognizance to be discharged, unless the overseers of the poor should appear at this term and show cause to the contrary.

## Case No. 14,817.

UNITED STATES v. CLEMENTS.

UNITED STATES v. REID.

[3 Hughes, 509; [1] Howison, Cr. Tr. 89.]

Circuit Court, E. D. Virginia. May 19, 1851.

WITNESS—JOINT INDICTMENT—NEW TRIAL—AFFIDAVIT OF JURORS.

1. In joint indictments one of the accused is not a competent witness for the others, unless he have been acquitted.

2. On motions for new trial in criminal cases affidavits of jurors ought not to be received to impeach their own verdict.

On the 4th of February, 1850, the schooner J. B. Lindsey, Captain S. S. Riggs, came into the port of St. Thomas, West Indies, with signals of distress, and on landing, the captain and two men, who composed the whole crew, reported that while at sea near Trinidad, the mate, John Heeney, and a passenger named John Walker, had been murdered by two of the crew, named Edward Clements and Thomas Reid, who had afterwards left the schooner in an open boat, and they were supposed to have landed somewhere on the Spanish main. The American commercial agent at St. Thomas, Charles H. Delavan, Esq., took prompt measures for their discovery and arrest. He had handbills printed and extensively circulated in which the men were described, and a reward of two hundred dollars was offered for their apprehension. Mr. Delavan addressed a letter to Louis Baker, Esq., American consul at Laguayra, Venezuela, inclosing one of the handbills, and earnestly asking his attention to the subject. In a very short time the following letter was received by the chief of police at Laguayra from the custom-house officer at Higuirote, a small port on the Atlantic, not far from Laguayra: "(Translation.) Custom-House, Republic of Venezuela, Comptroller's Office, Higuirote, February 11th, 1850. The Mayor of the County, Laguayra: I have passed to the honorable secretary of state on this day, under the number of 73, a communication where I inform him that a boat had reached this port with two Englishmen, who stated they came from Maracaibo in five days of navigation, and as they have not presented any document that will justify what they say, or the